We'll hear next from the parties in Dunne v. Cohen. May it please the Court, my name is Alec Ostro and I represent the appellant Gail Killalay Dunne. Your Honors, this is a case about correcting an abuse of the U.S. bankruptcy process that has allowed the trustee in bankruptcy here to place an ordinary litigant, my client, at an extreme procedural disadvantage. By lifting the automatic stay, the bankruptcy court permitted my client to be sued based on the same underlying transactions by two separate fiduciaries in two separate countries on three continents. She has the extra burden of defending the same transactions multiple times and she is subjected to the risk of inconsistent judgments. Why does she have the right to the stay? She's neither a creditor nor a co-debtor here. I'm having difficulty with that. It's not a right to the stay that we're talking about, Your Honor. It's a question of whether she has the right to oppose what the trustee has done to her. That goes to her standing here. But she's not a creditor or a co-debtor. So to that extent, why should she be heard on whether the bankruptcy court lifts the stay or not? She should be heard. Not put in place for her protection. Your Honor, I respectfully disagree. The stay applies to all entities. One of the primary purposes of the bankruptcy stay is to coordinate proceedings and prevent chaos of multiple proceedings. It could be all over the country. In this case, it's multiple countries. One of the purposes of the stay- For the benefit of maintaining the bankruptcy estate and allowing it to be administered. It's not concerned with whether or not non-creditors and non-debtors encounter more or less litigation burdens. Respectfully, I don't think that is the entirety of the purpose. That may be a primary purpose. But the automatic stay applies to all entities. All entities are entitled to rely on it. All entities are entitled to the protection of it. Again, the issue would be if a particular defendant in a particular fraudulent conveyance case, the estate has the exclusive right to bring this case. If you lift the stay and allow all the creditors, say there were hundreds of them, to bring the same lawsuit in all different parts of the country, indeed all different parts of the world, that would not promote the purpose of the bankruptcy code to coordinate and centralize proceedings involving an estate. But presumably the trustee or some number of creditors would bring that to the bankruptcy court's attention. The problem, Your Honor, is that the trustee likes this state of affairs. The creditors like this state of affairs. They like to be able to squeeze my client, to impose extra burden, to put her at risk of inconsistent judgments. And in particular, this is a particularly obnoxious kind of risk because we have a trustee in bankruptcy in the United States. We have an official assignee in Ireland. And neither is the agent of each other. And they're bringing the same essential fraudulent transfer action. They may be after different properties located in different jurisdictions. But it's based on the same underlying set of transfers between the debtor and the debtor's wife, the appellant, my client. And the question is, were these fraudulent transfers? And if the official assignee loses in Ireland, then the trustee in bankruptcy in Connecticut could say, that's not binding on me. I could try the same transfers all over again. My client, on the other hand, is the same person in both places. So if she loses in Ireland, she's going to lose in Connecticut and vice versa. So these two different fiduciaries. The bankruptcy court found, and the district court found no error in that conclusion, that the trustee and the official assignee were working cooperatively to coordinate proceedings in Ireland and in the United States. Do you have any reason, or is it reflected in the documents, that that was inaccurate? Your Honor, all we have in the record is the say-so of the trustee. The official assignee has not made any statement in the record in the United States. And we don't know what the extent of this cooperation is. We don't know if it's reduced to an agreement. And if it's been reduced to an agreement, we don't know what this agreement says, because nobody's ever seen it. I may not know, but is there any reason to doubt those representations made to the court? Your Honor, the representations are very, very general. We don't know the extent of the cooperation. We don't know the contours. We don't know what it consists of, and we don't know what areas they are allowed to disagree with each other. I mean, we have examples. I mean, this is not in the record. But there are examples of the trustee and the official assignee taking opposite views on a particular issue. So we don't know the extent of the cooperation. It's not as though there is some protocol that has been filed in both jurisdictions and approved by both courts. We simply have a statement that says we've agreed to cooperate with each other. And I have no doubt that, as far as that statement goes, it's true. But we don't know what it means, and we don't know when it could be reversed. But the problem here, Your Honor, is it is particularly unfair to lift the automatic stay to allow an ordinary litigant in a fraudulent transfer case to be exposed to this kind of multilateral attack. She has the right— We said we had a decision from the 1980s, Comcatch Corp., and I don't know if you're familiar with it. Yes, Your Honor. Why isn't it controlling here? Well, Your Honor, we're not looking to lift the stay. In Comcoach, that was a creditor of a creditor that was actually trying to lift the stay. I think the rights are very different when you're trying to oppose what is proposed to be done to you. In that case, we did say that if you're neither a creditor or a debtor, you're not the party in interest in the context of challenging, talking about the parameters of the automatic stay. But you say that's limited to context where this person is attempting to seek relief from the stay. Your Honor, I think it's different if you are the instigator as opposed to the defender. And, Your Honor, I think you wrote in the Zernow case that pecuniary interest in the bankruptcy case is not the sole ground for standing in bankruptcy. And I think it's a mistake for the bankruptcy court to have rested solely on the notion that the appellant doesn't have a pecuniary interest in the case. She has the interest to prevent herself from being unduly prejudiced by a litigation posture that has been brought about by the lifting of the automatic stay in this case. And I think both the analysis of the bankruptcy court in going through the applicable factors, the Sonax factors from this court, the bankruptcy court completely misconceived the appropriate factors because lifting the stay does not result in a complete resolution of the case. It does not result in judicial economy. It does not result in fairness. The parties weren't ready for trial in the other jurisdiction. All these factors were misconstrued and misconceived by the bankruptcy court, and the district court's affirmance didn't make it any better because all the district court said was if the trustee and the creditors like it, that's good enough for me. Respectfully, if that's the test, you may as well throw Sonax out the window because it ignores all these other critical factors. All right. I'm sorry, Your Honor. Why don't we hear from your adversary, and then we'll hear you again in rebuttal. Thank you. May it please the court. My name is Timothy Miltonberger. I represent Richard Cohn, who's the trustee of the bankruptcy estate of Sean Dunn. The first point I'd like to make to Your Honors is that Judge Schiff did not abuse his discretion when he lifted the automatic stay at the urging of the bankruptcy trustee with the support of 97% of the creditors of the bankruptcy estate. Judge Schiff's finding rests on no error of law. He made no clearly erroneous findings of fact, and his decision to lift the stay was within the range of permissible decisions that is committed to his discretion. The cause that was presented to the bankruptcy court was that cause existed to allow the Irish High Court and the Irish official assignee, who is a government official in Ireland, to litigate the validity of transfers that occurred in Ireland between two Irish nationals that was structured under Irish law where the witnesses to the transactions are located in Ireland, the documents related to the transaction are located in Ireland. When a decision is rendered there, will that bind the U.S. trustee? That decision will bind the U.S. trustee if someone comes before a court and says that there was sufficient privity between the trustee and the official assignee to have collateral estoppel or res judicata apply. You're not going to concede that. You're going to fight that. I can't concede that at this time, Your Honor, because there will be years of litigation between now and then. I understand that's part of your adversary's argument, that the trustee would get a second bite at the apple if she were to prevail in the Irish action. But by contrast, she would be bound by an adverse decision against her in the Irish action. The trustee would just piggyback onto it, and the argument is that that's not fair. That argument is made, but that argument is also incomplete. The perception that the appellant would like to give the court is that the parties are in unity on both sides of the V, but the reality is that the defendants in Ireland include Mrs. Dunn, and Mrs. Dunn is a defendant in the United States. Mrs. Dunn no longer resides in the United States, and the defendants that have money susceptible to collection by the trustee in the United States are entities known as Wall LLC and 151 Milbank LLC. 151 Milbank LLC is a Chapter 11 bankruptcy debtor in Bridgeport, Connecticut. Wall LLC is an LLC that owns a piece of real estate in Greenwich, Connecticut. And I would expect that if Mrs. Dunn were to lose in Ireland, we would hear from the entities in the United States that they are not bound by the findings of the Irish High Court. Let me ask just as a practical matter, if the stay were to remain in effect as the appellant is seeking, and the bankruptcy trustee and these others were to litigate the transfers in the U.S. court and lose, would the Irish action still be able to go forward then after the bankruptcy concluded? Your Honor, in 2014, the bankruptcy court issued an order granting relief from stay to Ulster Bank, an Irish banking institution with the support of the Chapter 7 trustee. As a result of that order, the official assignee was appointed in Ireland and Mr. Dunn was adjudicated a bankrupt in Ireland. Mr. Dunn appealed his adjudication as a bankrupt in Ireland to the Irish Supreme Court. And the Irish Supreme Court affirmed his adjudication as a bankrupt and said he can be a bankruptcy debtor in Ireland and a bankruptcy debtor in the United States. And at a very minimum, the Irish official assignee should act in a role to assist the liquidation of assets in the U.S. bankruptcy case, since the U.S. bankruptcy case and the Irish bankruptcy case have the same creditors. The point being, Your Honor, that if this court or the bankruptcy court had said that the automatic stay was going to remain in effect, we don't know whether the Irish courts would stop doing what they are doing. They now have been involved in more than two years of litigation. The litigation in Ireland has been exported to South Africa where there has been an asset restraint. And whether or not the official assignee would stop performing his statutory duties under Irish law because the United States Bankruptcy Court refused to let the automatic stay is a question of speculation. And I think that that brings us to the standing question, and that is whether or not Mrs. Dunn has suffered a direct adverse pecuniary injury as a result of the bankruptcy court's order. Three circuit courts have looked at the case of whether or not an order that causes a party to be subject to suit is sufficient to grant them standing under the bankruptcy case in chief. First, the Southern District of New York, in the old HB case, said that a bankruptcy court's order does not produce the direct and adverse pecuniary impact necessary to bestow standing on an appellate if the order's effect is merely to expose it to the risks of litigation. The Southern District of New York cited the Sixth Circuit Court of Appeals. In that case, there was an order that granted standing to a committee of administrative claim holders to sue people. The people that were subject of the suit wanted to appeal the order granting standing to the committee. They weren't parties in the bankruptcy case. They didn't have standing. In Travelers Insurance v. H.K. Porter, there was an order of the bankruptcy court allowing creditors to file claims which may result in litigation against travelers. The fact that the bankruptcy court entered an order in the bankruptcy case that might cause travelers to be sued did not give travelers standing. And the Ninth Circuit, in a case maybe most close to this, stated that an order of the bankruptcy court allowing the trustee to appoint a counsel to bring a lawsuit against the debtor's wife did not grant the debtor's wife standing in the bankruptcy case in chief. In this particular case, the order appealed from is an order lifting the automatic stay. And the automatic stay, according to this court, is for the benefit of, in some instances, the debtor, which is not implicated in this case, but otherwise it is for the benefit of the estate. And it is the estate itself that sought to lift the stay in this case with the support and at the urging of the vast majority of creditors in the case, 97% of the creditors of the case, because it is in the best interest of the estate to pursue the avoidance of transactions in Ireland with Irish witnesses and Irish documents in an Irish court with an Irish official assignee. To the extent Mrs. Dunn claims she may be prejudiced because of some discovery or other issue that may arise in either piece of underlying litigation, she has all the rights to appear in those litigations and assert her rights. She is currently doing that in the High Court of Ireland. She is currently doing that in the United States Bankruptcy Court. Both of those courts currently have under consideration claims made by Mrs. Dunn with regard to the duplicity of discovery and the sharing of information between the Chapter 7 trustee in the United States and the official assignee in Ireland. And the courts will work their way through those issues in the underlying litigation where it belongs. It is not appropriate to conflate her standing in the adversary proceeding and the litigation in front of the High Court with standing in the bankruptcy case. Thank you. Mr. Oster, you're reserved a few minutes. Your Honor, I think that the important issue is the unfairness of the process. I think Attorney Milton Berger has basically conceded that the trustee would not be bound by an adverse decision. You're in an abuse of discretion standard, and I think you still have to address the question of standing. So why don't you focus, I mean, make your argument, but focus on it in terms of those two questions. How does your client have standing? And then how is this an abuse of discretion? We're not here on de novo review of whether to lift the stay. Understood, Your Honor, on standing. She has constitutional standing under the Supreme Court. Right, right. It's the question of whether she has standing under our view that the bankruptcy code provides for a second layer. Well, Your Honor, again, she has standing because she is being attacked, and she has standing to defend herself the same way that the criminal defendant in the Bond case in front of the Supreme Court had the ability to argue the Tenth Amendment even though she wasn't a state. It's the same as in this Court's case in SEC against Miller, which was an SEC asset freeze against a bunch of defendants, including a debtor, and the debtor's relatives who, like Mrs. Dunn in this case, were neither debtors, trustees, creditors, and they had standing, or they were allowed to address the merits of whether the asset freeze by the SEC was invalid as a violation of the automatic stay. This Court decided that case on the merits. This Court did not say that these relatives of the debtor, these non-debtors, these non-creditors, lacked standing to contest the automatic stay. They said the automatic stay blocked the SEC from an asset freeze on property that affected them. This Court had no difficulty addressing the merits. They lost on the merits, but this Court addressed the merits, and since standing is, after all, a fundamental jurisdictional issue, then the Court essentially sub silentio said that kind of standing was okay. It is not the case that you need pecuniary interest to have bankruptcy standing. Judge Livingston's case in Zernal said that, but we cite three examples in the main brief of situations where it's recognized that people who don't have pecuniary interests in bankruptcy cases have standing. If someone is proposed to be designated as a responsible person, say, you know, who is going to be it for the debtor? Somebody is selected by the trustee and said, you, you're going to be the debtor. That person has standing to resist that designation. Because their interest is the assignment. Here your client's interest is pecuniary. And so to that extent, I'm not sure how you can establish standing unless you can say that the stay or the lifting of the stay directly and adversely affects you pecuniarily. Yes, Your Honor, and that's exactly what they say. Okay, so the argument that your adversary just made is it doesn't affect you directly because you could go to Ireland and win. And so that's their argument. Tell me why that's not a way we should look at it. You shouldn't look at it that way, Your Honor, because the only reason that as far as American law is concerned, that the official assignee has any right to pursue a fraudulent transfer action, is that the stay has been lifted. Because the fraudulent transfer actions belong exclusively to the trustee unless and until the bankruptcy court lifts the stay and allows somebody else to bring that. That's the trustee's concern, and indeed the First Circuit thinks that only the trustee can seek to enforce or complain about the automatic stay. But even if we assume that that's not the limit of it, your client has no right to the stay. Your Honor, I think my client has the right to have the stay respected. Since she's bound by the automatic stay just as... Even when the trustee doesn't think it's the best way to administer the bankruptcy estate? Precisely, Your Honor, because the trustee just doesn't have the right to say, I like this state of affairs, therefore this is the state of affairs that will be. Especially when it puts my client at a procedural disadvantage of litigating on two continents and being subjected to the risk of inconsistent results. Why don't you tell us why you think the bankruptcy court abused its discretion? Your Honor, this court has set forth the factors to be considered in lifting the stay. The Sonax factors. And we think that the bankruptcy court just clearly got them wrong as a matter of law or as a matter of fact. Now, there was no evidentiary hearing below, so the question is whether there was any actual basis for factual finding. But the notion that by lifting the stay you get a complete resolution of the underlying dispute is clearly erroneous. The notion that by lifting the stay you have judicial economy is clearly erroneous. The notion that by lifting the stay that you have a balance of harms that tips decidedly in favor of the trustee is clearly erroneous. These are the important factors. And these are the ones that the bankruptcy court precisely got wrong. And that's why on an abuse of discretion standard, this court has the ability and indeed the mandate to reverse the bankruptcy court. Thank you. Thank you, Your Honor. We'll take the case under advisement.